UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERGEY S.,[1] | ) |
| | ) No. 21 CV 4966 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) July 11, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Sergey S. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting that he is disabled by intellectual, depressive, and anxiety disorders. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for benefits. For the following reasons, Sergey's request for remand is granted:

**Procedural History**

Sergey filed DIB and SSI applications in May 2019, claiming a disability onset date of April 1, 2019. (Administrative Record ("A.R.") 13, 207-14.) After his applications were denied initially and upon reconsideration at the administrative level, (id. at 13, 59-80, 83-110), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 138-40, 165-89). Sergey appeared with his

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Sergey's first name and last initial in this opinion to protect his privacy to the extent possible.

attorney at a November 2020 hearing, at which he and a vocational expert ("VE") testified. (Id. at 28-58.) The ALJ ruled in December 2020 that Sergey is not disabled. (Id. at 13-22.) In July 2021 the Appeals Counsel denied Sergey's request for review, (id. at 1-5), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Sergey then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Sergey argues that the ALJ erred by: (1) rejecting the state agency psychologists' opinions without explanation and failing to account for concentration, persistence, and pace ("CPP") and other limitations in the residual functional capacity ("RFC") and the hypothetical to the VE; and (2) improperly assessing Sergey's subjective symptom statements.[2] (R. 11, Pl.'s Br. at 2.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels"

---

[2] Sergey also asserted in his opening brief that the ALJ denied him benefits without constitutional authority to do so, but in his reply, he withdrew this argument. (R. 20, Pl.'s Reply at 16.)

it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Yet "[a]ll [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review.'" *Warnell v. O'Malley,* 97 F. 4th 1050, 1054 (7th Cir. 2024). To warrant reversal, a claimant must do more than "nitpick the ALJ's order." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Indeed, a claimant "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Id.* Having considered the arguments and record under this standard, the court finds that remand is warranted because the ALJ did not support her analysis with substantial evidence.

A. **Opinion Evidence and RFC Assessment**

At the outset, Sergey argues that the ALJ erred by rejecting the state agency psychologists' opinions, including the opinion that Sergey could perform work requiring only one- to two-step instructions, without adequately explaining her reasoning and by failing to incorporate CPP and other limitations assessed by the consultants into the RFC and the hypothetical presented to the VE. (R. 11, Pl.'s

3

Br. at 2, 8-12.) When evaluating opinion evidence, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

State agency psychologist Dr. Russell Taylor opined at the reconsideration level that in the functional area of maintaining CPP, Sergey is markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, and work in coordination with or in proximity to others without being distracted. (A.R. 92-94, 104-08.) Given these limitations, Dr. Taylor opined that Sergey could "understand, remember and concentrate

4

sufficiently in order to carry out one or two-step instructions" and "make simple work related decisions." (Id. at 94.) For support, Dr. Taylor referred to a prior disability claim noting that Sergey had a primary diagnosis of "Mental Retardation" with "marked limitations in CPP." (Id. at 90 (noting high school special education services resulting from full-scale IQ of 49; also noting consulting examiner's ("CE") findings in prior claim of full-scale IQ of 65); see also id. at 383-85 (reflecting Sergey's full-scale IQ of 65 in March 2010 and diagnosis of "Mental Retardation (mild)").)

The ALJ found Dr. Taylor's opinion "persuasive" and accepted his findings that Sergey suffers from depressive, intellectual, and anxiety disorders. (Id. at 20.) But the ALJ rejected Dr. Taylor's opinion that Sergey must be limited to one- to two-step instructions because she said it was "not supported by the evidence." (Id.) She instead concluded without explanation and without citation to the administrative record that Sergey "demonstrated an ability to understand and learn terms, instructions and procedures, perform 1 to 3 step instructions, ask and answer questions and correct mistakes." (Id. at 15.)

The ALJ also considered reports by Drs. Patti Kimbel and Grant Boyer, psychological CEs, who did not offer mental RFC assessments but found that Sergey was "incapable of complex tasks" and suffered from generalized anxiety disorder. (Id. at 20; see also id. at 388-92 (Dr. Kimbel's July 2019 opinion that Sergey "appears capable of managing very simple tasks with instruction"), 410-12 (Dr. Boyer's November 2019 opinion that Sergey "failed at two and three digits forward" assessments and has "Mild Range of Intellectual Disability" and "Generalized

5

Anxiety Disorder").) The ALJ noted that both CEs characterized Sergey's intellectual disability as "mild" and included in their opinions "the litany of symptoms listed by [treating psychiatrist] Dr. [Elen] Tylkin," including diagnoses of schizophrenia and Tourette's syndrome, which the ALJ found were not supported by the record.[3] (Id. at 19-20.) The ALJ concluded that the CEs' "examinations and observations established only mild to moderate mental impairments and attendant limitations." (Id. at 20; see also id. at 15-16 (assessing moderate limitations in each of the paragraph B functional areas).)

When evaluating the opinion evidence, the ALJ did not address state agency psychologist Dr. Michael Cremerius's opinions at the initial stage, including that Sergey was: markedly limited in his ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public; and moderately limited in his ability to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in proximity to others without being distracted by them, get along with coworkers without distracting them, respond appropriately to changes in the work setting, and set realistic goals or make plans independent of others. (Id. at 65-67, 76-78.)

---

[3] The ALJ found Dr. Tylkin's RFC "not persuasive" because it was "not support[ed]" by the record, which did not include any treatment notes from Dr. Tylkin dated before August 2019 or after November 2019. (A.R. 19.) The ALJ also determined that Dr. Tylkin's opinions were not consistent with findings from consulting psychologists, who over the years posited that Sergey had no "more than mild mental impairments." (Id.) Sergey does not challenge the ALJ's evaluation of Dr. Tylkin's opinions on appeal.

6

As an initial matter, Sergey asserts that the ALJ's error in not addressing Dr. Cremerius's opinion constitutes "a *prima facia* violation of the [Social Security Administration's ("SSA")] own regulation" requiring an ALJ to address state agency consultants' opinions. (R. 11, Pl.'s Br. at 11 (citing 20 C.F.R. § 404.1520c).) The government responds that while "it is best practice for an ALJ to discuss both the initial and reconsideration state agency assessments," Sergey has not shown that the ALJ's failure to discuss Dr. Cremerius's opinions constitute harmful error. (R. 17, Govt.'s Mem. at 11.) But the ALJ's failure to address Dr. Cremerius's opinions is troubling because his finding—that Sergey was markedly limited in his ability to understand, remember, and carry out detailed instructions—undermines the ALJ's RFC assessment allowing him to work with three-step instructions. (See A.R. 65-66, 76-77.) There may be "a significant difference between one-to-two step tasks" and work requiring a higher level of reasoning. *See Schlattman v. Colvin*, No. 12 CV 10422, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014). Indeed, "the Department of Labor's Dictionary of Occupational Titles ("DOT") defines a Reasoning Development Level of 1 as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions" and states that "a limitation to one- or two-step work restricts the person to a Level 1 Reasoning job under the DOT, whereas simple work may also include Reasoning Level 2 or higher." *Id.* As such, the court does not find that the ALJ's failure to address Dr. Cremerius's opinions was harmless.

Even if this error does not require reversal, Sergey persuasively argues that the ALJ's evaluation of Dr. Taylor's opinions lacks the support of substantial

7

evidence. (See R. 11, Pl.'s Br. at 8-12.) In finding Sergey capable of performing work involving "simple, repetitive and routine, unskilled 1-3 step instructions, with routine changes only," (A.R. 17), the ALJ failed to trace her path of reasoning explaining how Sergey could perform three-step instructions given opinion evidence from the state agency consultants and CEs suggesting otherwise, (see id. at 65-67, 76-78 (Dr. Cremerius's opinion that Sergey was markedly limited in his ability to understand, remember, and carry out detailed instructions), 92-94, 104-08 (Dr. Taylor's opinion that Sergey could not carry out more than "1-2 step instructions"), 388-92 (Dr. Kimbel's opinion that Sergey can handle only "very simple tasks with instruction"). While the ALJ was not required to deem persuasive or adopt the state agency psychologists' or CEs' opinions, she "was required to—[but] did not—explain why [s]he adopted some of their findings and rejected others." *Diaz v. Berryhill*, No. 16 CV 11419, 2017 WL 4163959, at *2 (N.D. Ill. Sept. 20, 2017). In other words, the ALJ did not connect the evidence showing Sergey was limited in carrying out more than "very simple tasks with instruction" with her conclusion that Sergey could perform up to "3 step instructions." (Compare A.R. 388-92 with id. at 17.) Accordingly, remand is warranted.

Given the errors identified in the ALJ's opinion evaluation, a new RFC assessment may be warranted on remand, which may in turn result in one or more new hypotheticals being presented to a VE during an administrative hearing. When reassessing the RFC, the ALJ should sufficiently articulate why she has incorporated—or omitted—limitations arising from Sergey's medically determinable

8

impairments, including CPP and other limitations. (See R. 11, Pl.'s Br. at 10 (arguing that ALJ also should have considered Sergey's need for "increased supervision [and] increased number of breaks").)

**B.     Symptom Assessment**

Sergey complains that in dismissing his symptom statements as "not entirely consistent," the ALJ relied too heavily on his past ability to work and perform daily activities. (R. 11, Pl.'s Br. at 12-14.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Sergey first contends that the ALJ improperly relied on his ability to work during a nonapplicable period as "dispositive" of his non-disabled status during the applicable period. (R. 11, Pl.'s Br. at 12-14.) When assessing Sergey's symptom statements, the ALJ emphasized that Sergey worked at Goodwill Industries for 10 years "without negative performance reviews" or any "indication of a sheltered

9

workshop environment."[4] (A.R. 15-16, 20.) But Sergey is correct that this 10-year period is outside the relevant period for purposes of this appeal, and the VE said it was "impossible to know" whether Sergey worked in a "supported" environment at Goodwill, which she described as "a social service agency" that has "both supportive and competitive work environments." (Id. at 57.) Sergey also correctly points out that "[t]he fact that [he] worked in the past does not necessarily conflict with allegations of disability, particularly as there was evidence that [he] required increased supervision and direction to complete activities." (R. 11, Pl.'s Br. at 12 (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (noting that "pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . [may] differ dramatically," affecting a claimant's ability to work outside the home)).)

Sergey next asserts that the ALJ placed too much emphasis on daily activities such as his ability to care for his disabled mother, even though a claimant like Sergey may employ "heroic efforts" to ensure family members receive needed care. (R. 11, Pl.'s Br. at 14 (internal quotations omitted); A.R. 36.) The ALJ also relied on Sergey's ability to pay bills, citing Dr. Kimbel's note that Sergey reported during his consultative examination that he handled all finances. (A.R. 18; see also id. at 388.) At the hearing, however, Sergey testified that his mother pays the electric bill, and he did not believe there were any other bills. (Id. at 46.) Additionally, several

---

[4] Sergey testified at the hearing that he was terminated from Goodwill because someone "made fun of him and attacked him with a knife," and his employer did not believe him. (A.R. 21.)

consultants, including Dr. Kimbel, questioned whether Sergey could manage funds or a household independently. (Id. at 390 (Dr. Kimbel's finding that "[i]t is questionable whether or not [Sergey] could function and manage a household independently or without his mother's involvement based on his intellectual deficits"); see also id. at 385 (consulting psychologist Dr. William Lee's finding that "[d]ue to his deficits [Sergey] is unable to independently manage any funds"), 412 (Dr. Boyer's finding that if funds were awarded, a family member should "assume responsibility for management of funds").)

The ALJ further doubted the validity of Sergey's IQ testing, suggesting that the scores were impacted by "language barriers" rather than reflecting Sergey's intellectual impairment. (Id. at 19-20.) But as Sergey points out, the examiners in both sets of testing deemed the scores "valid representation[s]" of Sergey's "current intellectual ability." (R. 11, Pl.'s Br. at 14 (citing A.R. 241, 385).) Regardless, the ALJ found that Sergey was able to graduate from high school, having achieved "mostly As and Bs, with 2 Cs" later in high school, "failing only choir." (A.R. 19.) But the ALJ glossed over the fact that Sergey did so while receiving special education services. (Id.; see also id. at 388 (Dr. Kimbel reported Sergey was "in special education throughout grade school and high school").)

As a result, the court has concerns that the ALJ did not properly consider the limiting effects of Sergey's daily activities and prior work or confront the evidence that did not support her analysis. Where, as here, the ALJ failed to "adequately explain" her symptom assessment, substantial evidence is lacking. *Minnick v.*

11

*Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). On remand, the ALJ should revisit her analysis and consider the full record. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

## Conclusion

For the foregoing reasons, Sergey's remand request is granted. This matter is remanded for further proceedings consistent with this opinion.

ENTER:

*/s/ Young B. Kim*
**Young B. Kim**
**United States Magistrate**